**Sharon BLACKMON–MALLOY,
et al., Plaintiffs,**

v.

**UNITED STATES CAPITOL POLICE
BOARD, Defendant.**

**No. CIV.A. 01–2221(EGS).**

United States District Court,
District of Columbia.

Sept. 30, 2004.

Charles W. Day, Jr., Joseph D. Gebhardt, Gebhardt & Associates, LLP, Washington, DC, Richard Lloyd Thompson, II, Nathaniel D. Johnson & Associates, Waldorf, MD, for Plaintiffs.

Andrea McBarnette, Laurie J. Weinstein, Robin M. Earnest, U.S. Atty's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

## I. Introduction

Plaintiffs Sharon Blackmon–Malloy, Dale Veal, Vernier Riggs, Luther Peter-son, Duvall Phelps, Larry Ikard, and Frank Adams bring a class complaint on behalf of themselves and all current or retired African American United States Capitol Police Officers. Plaintiffs allege that Defendant has engaged in a pattern and practice of race discrimination in employment. Defendant is the United States Capitol Police Board.

Pending before this Court and ripe for its review is defendant's Motion to Dismiss plaintiffs' Joint Second Amended Class Action Complaint. Plaintiffs have also moved for class certification. By Order of March 8, 2004, this Court suspended briefing of the Motion for Class Certification until the Motion to Dismiss was resolved.

## II. Background

Filed under the Congressional Accountability Act[1] ("CAA" or "Act"), this putative class action alleges that the United States Capitol Police Board ("USCP") discriminated against its African American Officers. *See* 2 U.S.C. §§ 1301–1438. Plaintiffs seek compensatory damages and injunctive relief on behalf of all African American officers employed at any point in time from November 4, 1998, to the present.

Count I of the Second Amended Complaint alleges disparate treatment based on race (a) in personnel decisions such as promotions, other selections, work assignments, discipline, and termination; (b) by creation of a hostile work environment; and (c) through harassment and retaliation against African American officers who oppose discrimination. Count II alleges the USCP has maintained a system of pro-

---

1. Plaintiffs' Complaint notes that it is also filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. However, prior to the Congressional Account- ability Act, these laws were not applicable to legislative branch employees. 42 U.S.C. § 1302. Thus, the Court will construe these statutes as incorporated by the Congressional Accountability Act. 42 U.S.C. § 1301 *et. seq.*

motions, other selections, work assignments, discipline, and termination that has had a disparate impact on African American employees. Count III alleges that plaintiffs Mary Jane Rhone, a civilian USCP employee, and Thomas Spavone, a Hispanic Officer, have been subjected to a hostile work environment based on their known associations with African American officers.

Because Title VII of the Civil Rights Act of 1964, as written, does not extend to legislative branch employees, the Congressional Accountability Act provides the exclusive procedure by which current or former legislative branch employees can bring a suit challenging employment discrimination. *See* 42 U.S.C. § 2000e–16(a). Effective January 23, 1996, the CAA extends the rights and protections of eleven previously existing federal laws covering various labor, civil rights, and workplace matters to employees in the legislative branch. *See* 2 U.S.C. §§ 1302, 1311.

Section 408(a) of the CAA provides:

(a) Jurisdiction

The district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation.

In addition, section 402 provides that such counseling must be requested and completed within a specific time period:

To commence a proceeding, a covered employee alleging a violation of a law made applicable under part A of subchapter II of this chapter shall request counseling by the Office [of Compliance]. The Office shall provide the employee with all relevant information with respect to the rights of the employee. A request for counseling shall be made not later than 180 days after the date of the alleged violation.

Section 403 requires an employee to file a request for mediation within 15 days of receipt of notice of the end of the counseling period. 2 U.S.C. § 1403(a).

## II. Standard of Review

Defendant moves to dismiss plaintiffs' Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6).

### 1. Rule 12(b)(1)

"Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Uberoi v. EEOC,* 180 F.Supp.2d 42, 44 (D.D.C.2001). Accordingly, "the plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* The D.C. Circuit instructs that when a motion to dismiss "present[s] a dispute over the factual basis of the *court's subject matter jurisdiction,*" the Court:

> may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.

*Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir.2000).

When a plaintiff fails to follow administrative requirements prior to filing suit, dismissal under Rule 12(b)(1) is appropriate. *See. e.g. Martin v. EPA,* 271 F.Supp.2d 38, 42–47 (D.D.C.2002).

### 2. Rule 12(b)(6)

When considering a Rule 12(b)(6) Motion to Dismiss, the Court construes the facts in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff. *See Swierkiewicz v. Sorema,* 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A Motion to Dismiss is granted and the complaint dismissed only if no relief could be granted on those facts. *See Sparrow v. United Air Lines Inc.,* 216 F.3d 1111, 1114 (D.C.Cir. 2000).

A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted when the facts giving rise to the defense are apparent on the face of the complaint. *U.S. ex. rel. Purcell v. MWI Corp.,* 254 F.Supp.2d 69, 73 (D.D.C.2003).

## III. DISCUSSION

### A. Barriers to Litigation under the Congressional Accountability Act

### 1. Exhaustion of Administrative Remedies is a Jurisdictional Requirement to Filing Suit

As stated previously, section 408(a) of the CAA provides:

> The district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress

for a violation for which the employee has completed counseling and mediation. 2 U.S.C. § 1408(a). Section 402 states that "[a] request for counseling shall be made not later than 180 days after the date of the alleged violation." 2 U.S.C. § 1402. Section 403 states that "[n]ot later than 15 days after receipt by the employee of notice of the end of the counseling period under section 1402 of this title, but prior to and as a condition of making an election under section 1404 of this title, the covered employee who alleged a violation of a law shall file a request for mediation with the Office [of Compliance]." 2 U.S.C. § 1403. Thus, defendant argues that this Court only has subject matter jurisdiction over an individual's claim if that plaintiff has alleged that she completed counseling and mediation regarding the alleged violation within the time limits specified by sections 402 and 403 of the Act. *See id.*

On the other hand, plaintiffs argue that this Court should take its cues from the Title VII case law and apply less stringent requirements. The Supreme Court has held the Title VII's timeliness requirements are "requirement[s] that, like a statute of limitations, [are] subject to waiver, estoppel and equitable tolling." *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Plaintiffs note that in *Thompson v. Capitol Police Board,* the court took the rationale in *Zipes* and applied it to the CAA to find that the CAA's timeliness requirements is not jurisdictional, but rather, like Title VII's timeliness requirement, is subject to equitable tolling. 120 F.Supp.2d 78, 83 (D.D.C.2000).

■ However, this Court does not find the reasoning in *Thompson* persuasive. Although the *Zipes* Court was cross-referencing the jurisdictional provision to see if

it mentioned timeliness and the timeliness provision to see if it mentioned jurisdiction, it appears that the *Thompson* court only examined the timeliness provision to see if it mentioned jurisdiction. *Compare Zipes,* 455 U.S. at 393–94, 102 S.Ct. 1127 (*"The provision granting district courts jurisdiction* under Title VII, 42 U.S.C. §§ 2000e–5(e) and (f) does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. It *contains no reference to the timely-filing requirement. The provision specifying the time for filing charges* with the EEOC appears as an entirely separate provision, and it *does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."*) *with Thompson,* 120 F.Supp.2d at 83 ("Similarly, *the CAA provision that specifies a time for filing charges appears* in a separate section from the one covering jurisdiction, and *does not make any mention of jurisdiction."*) (emphasis added).

The jurisdictional provision of Title VII, which is silent to timeliness, provides:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e–5(f)(3). However, the jurisdictional provision of the CAA provides:

> The district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee *who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation.*

2 U.S.C. § 1408(a)(emphasis added).

In *Gibson v. Office of the Architect of the Capitol,* the district court found that a claim of discrimination had not been timely filed because the limitations period for requesting counseling began to run on the date plaintiff was informed of his non-selection and not the date plaintiff was able to observe the age of the successful candidate. Civ. Action No. 00–2424(CKK), slip op. at 7–10 (D.D.C. Nov. 19, 2002), *aff'd without publ. Op.,* No. 03–5031, 2003 WL 21538073, *1 (D.C.Cir. July 2, 2003)(per curiam). In considering whether equitable tolling applied to the limitations period in the CAA, the district court acknowledged the *Thompson* decision, but found the reasoning of district court's opinion in *Halcomb v. Office of the Senate Sergeant–at–Arms of United States Senate* "to be more persuasive." *Id.* at 12 (citing *Halcomb,* 209 F.Supp.2d 175, 179 (D.D.C. 2002)). Particularly persuasive was that "[t]he *Halcomb* court, instead of focusing on the similarities between the CAA and Title VII sections regarding administrative filings, examined dissimilarities between the two statutes' jurisdictional provisions." *Gibson,* slip. op. at 12. The *Gibson* court found the distinction between the structure of the two statutes to be "significant" and,

relying on the Supreme Court's decision in *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), held:

> Given the clear language of Section 1408 and the Supreme Court's guidance in interpreting Congressional waivers of sovereign immunity, this Court agrees with the *Halcomb* court and finds the doctrine of equitable tolling does not apply to actions brought under the CAA.

*Gibson*, slip. op. at 13. On appeal, the D.C. Circuit summarily affirmed the *Gibson* Court's holding that plaintiff "failed to timely file a request for counseling pursuant to the [CAA]." *See* 2003 WL 21538073 at *1.

In contrast to Title VII, the CAA does specifically limit the Court's jurisdiction to cases in which plaintiff has timely exhausted the administrative remedies. *See* 2 U.S.C. § 1408(a). This Court is persuaded that by explicitly using the phrases "under section 1402" and "under section 1403," in the CAA's jurisdictional grant to the district courts, Congress intended to incorporate the timeliness requirement of sections 1402 and 1403 for purposes of establishing jurisdiction.

For all these reasons, this Court finds that timely exhaustion of administrative remedies is a jurisdictional requirement to filing suit.

## 2. Sovereign Immunity is Waived Only for Covered Employees who Timely Comply with the Counseling and Mediation Requirements.

This Court must interpret CAA's language against the backdrop of the sovereign immunity doctrine. The United States, as sovereign, is "immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court defines the court's jurisdiction to entertain the suit." *United States v.*

*Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).

Plaintiffs argue that the CAA was intended to be as broad as Title VII: "The following laws shall apply ... to the legislative branch of the Federal Government ... (2) Title VII of the Civil Rights Act of 1964 ..." 2 U.S.C. § 1302(a). As further evidence of a broad waiver of sovereign immunity, plaintiffs note that section 1311(a) states that "[a]ll personnel actions affecting covered employees shall be made free from any discrimination." Further, plaintiffs observe that in the legislative history, members of both the Senate and House made floor statements expressing their belief that the anti-discrimination laws would apply to Congress as they have applied to private constituents. Pls.' Opp'n at 6–7.

However, as the Supreme Court has instructed, a waiver of sovereign immunity must be "unequivocally expressed" and its conditions must be "strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). "So long as a statute supposedly waiving immunity has a 'plausible' non-waiver reading, a finding of waiver must be rejected." *Galvan v. Federal Prison Industries*, 199 F.3d 461, 464 (D.C.Cir.1999) (citing *United States v. Nordic Village, Inc.* 503 U.S. 30, 37, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)). Moreover, "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the 'unequivocal expression' of elimination of sovereign immunity that [the Supreme Court] insist[s] upon is an expression in statutory text." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

Moreover, the Supreme Court specifically discussed the implications of a statute of

limitations contained in legislation that waives sovereign immunity:

> When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction. In particular, '[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereignty.'

*United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986)(quoting *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)). Here, the CAA contains limitation provisions in sections 402 and 403, both of which are referenced in section 408. Unlike in *Zipes,* which did not involve a suit against the United States or discuss waiver of sovereign immunity, the 180–days limitation period in section 402 "define[s] the extent of the court's jurisdiction" and constitutes a condition on the waiver of sovereign immunity. *See Mottaz,* 476 U.S. at 841, 106 S.Ct. 2224. The *Gibson* court agreed: "To find otherwise, would be to 'extend the waiver' in absence of any evidence that Congress intended a different result from the plain language of the provision." *Gibson,* slip. op. at 13.

▉ Although this Court is cautious in its reliance on legislative history when examining sovereign immunity, it is not insignificant that the sponsoring Senators introduced a section-by-section analysis of the CAA into the Congressional Record. 141 Cong. Rec. S622 (Jan. 9, 1995). The analysis of Section 402 states the consequences for untimely filing:

> For claims under any of these statutes, the request for counseling must be made within 180 days after the date of the alleged violation. A failure to request counseling within the time period bars an employee from proceeding under this

act to redress violations under these sections.

*Id.* at S629. Thus, it appears to this Court that the timeliness requirement is a condition of waiver of sovereign immunity—failure to comply is fatal. *See Halcomb,* 209 F.Supp.2d at 179; *Gibson,* slip. op. at 11–13.

### 3. Certification of a Class Action Would Not Waive the Requirement to Complete Counseling and Mediation

Plaintiffs concede that eighty-eight plaintiffs in this case did not go through mediation and counseling but wish to be included in the class action. Tr. 5/11/04 at 66–67.

Plaintiffs argue that it is well-settled class action jurisprudence that as long as one named plaintiff has satisfied administrative requirements, other plaintiffs with the same claims may join the case. *Foster v. Gueory,* 655 F.2d 1319, 1321 (D.C.Cir. 1981) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)); *Romasanta v. United Airlines, Inc.,* 537 F.2d 915, 918 (7th Cir.1976); *Dodge v. Giant Food, Inc.,* 488 F.2d 1333 n. 1 (D.C.Cir.1973); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 985 n. 11 (D.C.Cir.1973). The *Foster* court noted

> It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume that the next one would be successful.

*Id.* at 1322 (quoting *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir. 1968)). Approving this rationale, the D.C. Circuit went on to explain that:

> In class actions, this rationale is invariably applicable, for the very fact that the

suit is a class action means that the plaintiffs' claims not only share common questions of law and fact, but those claims are such that representative plaintiffs will fairly and adequately protect the interests of all plaintiffs of the class.

*Id.*

Without the benefit of full briefing on the issue, this Court applied the doctrine of vicarious exhaustion in a proposed class action under the CAA. This Court noted that "any failure to exhaust by Plaintiffs Rucker and Perry will be immaterial if the court decides to certify a class." *Harris v. Office of the Architect of the Capitol,* 16 F.Supp.2d 8, 10 (D.D.C.1998). This Court now modifies its prior position.

■ Upon further analysis, it appears that vicarious exhaustion is barred by the plain meaning of the CAA, which only permits this Court to grant relief to covered employees who have "undertaken and completed the procedures described in sections 1402 and 1403." 2 U.S.C. § 1361(e).

The D.C. Circuit's pronouncement in *Foster v. Gueory* is grounded in the Supreme Court's decision in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In *Albemarle Paper* Co., the Supreme Court rejected petitioners' claims that no backpay could be awarded to individuals who had not filed a charge with the EEOC. *Id.* In doing so, the Court noted that courts of appeal had unanimously rejected this argument prior to the passage of the 1972 Equal Employment Opportunity Act, which amended Title VII. However, when the 1972 Act was in the Conference Committee, Congress specifically rejected a provision in the House bill (H.R.1746) that would have barred individuals who had not filed an EEOC charge. *Id.* Therefore, under Title VII as interpreted in *Albemarle Paper,* an award to class members who did

not file an EEOC charge is authorized by section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g). *See e.g. Robinson v. Lorillard Corp.,* 444 F.2d 791, 802 & n. 13 (1971).

While the CAA does incorporate the remedial provisions of 42 U.S.C. § 2000e–5(g), this incorporation is limited by the "generally applicable remedies and limitation" in section 1361 of the CAA. *See* 2 U.S.C. §§ 1311(b)(1)(A), 1361. Section 1361(e) specifically limits the remedies available under section 706(g) of Title VII, and all other remedial provisions incorporated by the CAA from other employment laws, by stating that "[o]nly a covered employee who has undertaken and completed the procedures described in sections 1402 [counseling] and 1403 [mediation] of this title may be granted a remedy under part A of this subchapter." 2 U.S.C. § 1361(e).

A "statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." *American Radio Relay League, Inc. v. FCC,* 617 F.2d 875, 879 (D.C.Cir.1980). Construing the CAA as plaintiffs suggest, to allow vicarious exhaustion, would effectively render section 1361(e) null and void by allowing this Court jurisdiction over the claims of individuals who did not request counseling and mediation.

Moreover, section 1361(f)(1) makes clear that, where there are conflicts between the CAA and laws incorporated by it, the CAA prevails. 2 U.S.C. § 1361(f)(1)("Except where inconsistent with definitions and exemptions provided in this chapter, the definitions and exemptions in the laws made applicable by this chapter shall apply under this chapter.").

At this juncture, it appears to this Court that only employees who have completed

counseling and mediation have a right of action under the CAA. *See* 2 U.S.C. §§ 1361(e), 1402, 1408. Otherwise, permitting officers who have not exhausted their administrative remedies to proceed through the class action mechanism would impermissibly create a substantive right and remedy in contravention of the doctrine of sovereign immunity.[2]

### 4. Adverse Action requirement

The D.C. Circuit has instructed that the "common element for discrimination and retaliation claims against federal employers, and private employers, is . . . some form of legally cognizable adverse action by the employer." *Brown v. Brody*, 199 F.3d 446, 453 (D.C.Cir.1999). For a plaintiff to prevail, she must be able to demonstrate that she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Id.* at 457. Specifically, a plaintiff must be able to show that the adverse employment action creates a tangible economic effect on plaintiff's employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 456.

In *Brown*, the D.C. Circuit held that "a plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other terms, conditions, or privileges of her employment or her future employment opportunities." *Brown*, 199 F.3d at 457.

Courts have also held that a claim of an undesirable assignment, without any effect on salary, benefits, or grade, is similar to claims regarding lateral transfers, and thus does not constitute an adverse action. *See Crenshaw v. Georgetown Univ.*, 23 F.Supp.2d 11, 18 (D.D.C.1998) *aff'd* No. 98–7194, 1999 WL 730808 (D.C.Cir. Aug. 13, 1999)(holding, prior to *Brown*, that change in duties without corresponding reduction in pay is not an adverse action).

Moreover, in *Brown*, the Court found that a letter of admonition did not constitute an adverse action. *Brown*, 199 F.3d at 458. In *Stewart v. Evans*, the D.C. Circuit specifically recognized that "formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits do not constitute adverse employment actions." 275 F.3d 1126, 1136 (D.C.Cir.2002). Fur-

---

**2.** Plaintiffs have argued that "whether a Rule 23 class action can be brought as a class action under the CAA is really a procedural issue, not a jurisdictional one, and it appropriately governed by the Federal Rules." Pls.' Opp'n at ¶ 12. However, the Supreme Court has stated:

> An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and [the Rules Enabling Act] authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish jurisdiction of federal courts.

*United States v. Sherwood*, 312 U.S. 584, 589–90, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). More than fifty years later, the Court declared the same position:

> Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that 'rules of procedure shall not abridge, enlarge or modify any substantive right.' 28 U.S.C.2072(b). *See also* Fed. Rule Civ. Pro. 82 ("rules shall not be construed to extend the [subject matter] jurisdiction of the United States district courts").

*Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

ther, the D.C. Circuit has required a showing that a poor performance evaluation had an actual effect on an employee's pay or benefits to constitute an adverse action. *Russell,* 257 F.3d at 818–19.

■ While the Court offers no opinion on whether these types of complaints can contribute to a hostile work environment, it seems clear that lateral transfers, undesirable assignments, and disciplinary warnings do not constitute adverse action.

## B. The Remaining Claims

### 1. Fulfilling Counseling and Mediation Requirements

■ Plaintiffs bear the burden of persuasion to establish subject matter jurisdiction in response to a Rule 12(b)(1) Motion to Dismiss. *See Thompson v. Capitol Police Board,* 120 F.Supp.2d 78, 81 (D.D.C.2000). The CAA allows a covered person "only to seek redress for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a). Plaintiffs bare allegations that they have "completed counseling and mediation with the Office of Compliance as required" are insufficient to establish subject matter jurisdiction in the face of a challenge. Jt. Comp. ¶¶ 7, 11.

Plaintiffs argue that nothing in the language of the CAA limits the mediation and counseling requirement to an individual employee, or indicates that an individual class agent may not fulfill the counseling and mediation requirement on behalf of a class of employees. However, nothing in the language of the CAA permits one person to fulfill the requirement for others. Instead, the waiver of sovereign immunity has been clearly articulated only as it applies to individual claimants. 2 U.S.C. § 1361(e)("Only *a covered employee* who has undertaken and completed the procedures described in sections 1402 [counsel-

ing] and 1403 [mediation] of this title may be granted a remedy under part A of this subchapter.") (emphasis added).

In defendant's first motion to dismiss, defendant identified twenty-two plaintiffs who failed to request counseling within 180 days of their termination date. Defendant notes that plaintiff James Griffin was not employed by defendant after November 4, 1998—the cutoff date for the proposed class. *See* Jt. Comp. ¶¶ 1, 13, 46; Def.'s Second Mot. To Dismiss Ex. I. Also in defendant's first motion to dismiss, defendant identified twelve plaintiffs who failed to request mediation within 15 days of receiving notice that counseling was completed. *See* Def.'s Second Mot. to Dismiss Ex. J. Defendant asserts that only six plaintiffs timely requested and participated in mediation. *See* Def.'s Second Mot. to Dismiss Ex. K, L. Defendant argues that all of these plaintiffs' claims should be dismissed for lack of jurisdiction.

Plaintiffs argue that the Office of Compliance made a determination that 270 plaintiffs had completed mediation when it issued the August 2, 2001, Notices of End of Mediation. *See* Pls.' Opp'n Ex. 1 at Ex. C. Plaintiffs state that in addition to the plaintiffs who participated in individual counseling, several other plaintiffs participated in three mass counseling sessions that the Office of Compliance designed to accommodate the large number of officers seeking counseling. As further proof of this fact, plaintiffs call the Court's attention to the Report to Congress on the Use of the Office of Compliance by Covered Employees for 2001. Pls.' Opp'n Ex. 3. The report notes that 278 USCP Officers requested counseling. *Id.* at 10. Plaintiffs argue that as an independent agency, the Office of Compliance is entitled to substantial deference when it reasonably interprets its own procedures. *See Chevron v. Natural Resources Defense Council,* 467

U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In response, defendant argues that the Office of Compliance's position on § 1361(e), that each individual covered employee must abide by the counseling and mediation provisions of the CAA, should be afforded "substantial deference" under *Chevron*. Defendant notes that from the beginning of the administrative process the Office of Compliance has been unwilling to accept a class complaint.[3] When the Office of Compliance promulgated its procedural rules in 1995, one commenter "requested that the rule specifically set forth the procedures governing class actions." Def.'s Second Mot. to Dismiss Ex. 11. The Office of Compliance declined to promulgate such rules and noted that the availability of class claims involved "substantive legal questions that are not appropriately addressed in these procedural rules." *Id.* Further, after issuing the end of mediation notice, the Executive Director of the Office of Compliance informed plaintiffs' counsel that, if they elected to file a single action in federal district court, "such an action cannot be maintained as a traditional representative 'class action' as that concept is understood by the Federal Rules of Civil Procedure" because 2 U.S.C. § 1361(e) only permits relief for employees who have completed counseling and mediation.[4] *See* Def.'s Second Mot. to Dismiss Ex. C.

Neither plaintiffs' argument that the Office's issuance of a notice of the end of mediation is a successful completion of administrative remedies deserving of *Chevron* deference, nor defendant's argument that the Office's unwillingness to promulgate class action rules is a rejection of class action complaints deserving of *Chevron* deference, is persuasive. By its terms, *Chevron* deference only applies when an agency is interpreting an *ambiguous* statute. In issuing the notices of the end of mediation, the Office of Compliance was not interpreting whether mediation had been completed, but rather, the Office was performing a purely ministerial task as mandated by the CAA. 2 U.S.C. § 1403(c). The performance of a ministerial task is not entitled to any deference. The Office of Compliance's refusal to issue procedural rules and substantive regulations is not a proper application of *Chevron* deference.

Section 1402 provides "A request for counseling shall be made not later than 180 days after the date of the alleged violation." 2 U.S.C. § 1402; *see Gibson v. Office of the Architect of the Capitol,* Civ. Action No. 00–2424(CKK), slip op. at 7–10 (D.D.C. Nov. 19, 2002) (finding that the claim of discrimination has not been timely filed because the limitations period begins to run on the date plaintiff was informed of his non-selection, not the date plaintiff was

---

**3.** *See* Apr. 13, 2001 Letter from W. Thompson II to United States Capitol Black Police Ass'n and C. Ware. The day after materials were delivered to the Office of Compliance regarding "approximately 200 individual Capitol Police officers, former officers, and former recruits" the Executive Director notified plaintiffs' attorney that "the CAA requires that all proceedings be commenced by a request by an employee for counseling" and it was accepting the materials "as requests for counseling by each and every individual names in the material." *Id.* at 1–2. Each officer's case was assigned its own number

and treated as an individual case throughout counseling and mediation. *See* Def.'s Mem. at 10.

**4.** Defendant is correct to concede that the Office of Compliance's interpretation of the jurisdictional provisions in Section 1408 is not entitled to *Chevron* deference because "interpreting statutes granting jurisdiction to Article III courts is exclusively the province of the Courts." *Murphy Exploration & Prod. Co. v. United States Dep't of the Interior,* 252 F.3d 473, 478 (D.C.Cir.2001).

able to observe the age of the successful candidate), *aff'd without publ. Op.* No: 03–5031, 2003 WL 21538073, *1 (D.C.Cir. July 2, 2003) (per curiam)(noting its summarily affirmance that plaintiff "failed to timely file a request for counseling pursuant to the [CAA]"); *Thompson v. Capitol Police Board,* 120 F.Supp.2d 78, 82–83 (D.D.C.2000)(finding the court lacked jurisdiction to hear the cases under the CAA because plaintiff filed his request for counseling 188 days after the alleged violation). Because section 1402 is a jurisdictional requirement and because it is a waiver of sovereign immunity, it must be strictly construed. To the extent that any plaintiffs did not request counseling within 180 days of the alleged discriminatory act, those plaintiffs' claims shall be dismissed.

Moreover, section 408 cannot be read in isolation from section 403(b), which defines the process of mediation as one that "shall involve meetings with the parties separately or jointly for the purpose of resolving the dispute between the covered employee and the employing office." 2 U.S.C. § 1403(b)(2).

■ The Office of Compliance has issued a regulation which described mediation as follows:

> Mediation is a process in which employees, employing officers and their representatives, if any, meet separately and/or jointly with a neutral trained to assist them in resolving disputes. As parties to the mediation, employees, employing officers, and their representatives discuss alternatives to continuing their dispute, including the possibility of reaching a voluntary, mutually satisfactory resolution.

OC Rule 2.04(a). Because this is a proper context for *Chevron* deference, and the empowered agency promulgated regulations to explain an ambiguity in the statute, the Court shall defer to the Office of Compliance's definition of mediation. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, mediation is a process that requires, at the very least, meetings involving the parties and a neutral. It also requires an employee's presence. OC Rule 2.04(a); 2 U.S.C. § 1403(b)(2). Here, to the extent that only a few plaintiffs attended mediation, defendant was not afforded an "opportunity to right any wrong it may have committed." *See Jasch v. Potter,* 302 F.3d 1092, 1096 (9th Cir.2002)(citing *McRae v. Librarian of Congress,* 843 F.2d 1494, 1496 (D.C.Cir. 1988)).

■ An employee shall not be permitted to "complete mediation" by merely requesting mediation and then refusing to participate. To permit such behavior would thwart Congressional intent by eviscerating the mediation requirement established by Congress. *See Vinieratos v. United States Dep't of Air Force,* 939 F.2d 762, 772 (9th Cir.1991). Moreover, the Office of Compliance has recognized a good faith requirement by incorporating a good faith clause in the mediation agreement referenced in OC Rule 2.04(f)(2).[5] *See Def.'s Second Mot. to Dismiss Ex. N

---

**5.** The mediation began on June 5, 2001 and was terminated by a joint request of the parties on August 1, 2001. Beginning on July 25, 2001, defendant expressed its willingness to extend the mediation period and to proceed with several sessions at the same time so that all individual officers could participate. *See* Ex. M at 2 Aug. 1, 2001 Manning Letter. All plaintiffs opted not to participate further. *See* Ex. K at ¶ 7. On July 26, Officer Blackmon-Malloy, President of the United States Capitol Police Black Police Association, sent a letter to Christopher Ware stating that their "resources will better serve [them] in U.S. District Court" rather than in continuing the mediation process. *See* Ex. B. July 26, 2001

**2. This Court cannot exercise jurisdiction over plaintiffs whose employment ended prior to the effective date of the CAA—January 26, 1996.**

In defendant's first Motion to Dismiss, defendant identified seventeen plaintiffs whose termination dates were prior to the effective date of the CAA. Plaintiffs' joint second amended complaint acknowledges that plaintiffs only seek to represent African–American officers employed by defendant after November 4, 1998. Jt. Comp. ¶ 1. However, at least four of the individuals listed in paragraph forty-six of the joint second amended complaint were previously identified by defendants as included in the seventeen whose termination dates were prior to the CAA. Defendant argues that these individuals claims should be dismissed.

Plaintiffs respond by noting that this is an issue more appropriately dealt with after sufficient discovery has taken place to verify these allegations.

█ Because plaintiffs bear the burden of persuasion to establish subject matter jurisdiction in the face of a Federal Rule of Civil Procedure 12(b)(1) challenge and plaintiffs have offered no justification for why these dates are not undisputed and easily discernable, these plaintiffs' claims shall be dismissed.

**3. Only plaintiffs who participated in the 2000 Promotion Process have potentially viable promotion claims.**

The Supreme Court has explained that for discrete acts of discrimination or retaliation, a party must file an administrative charge within the limitations period, as measured from the date the act occurred. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Court further held that related discrete acts cannot be combined into a single unlawful practice for the purpose of timely filing. *Id.* "[D]iscrete acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* The Supreme Court noted that discrete acts included "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114, 122 S.Ct. 2061.

In distinguishing discrete acts from a "hostile work environment," the Court emphasized that a hostile work environment "cannot be said to occur on any particular day." *Id.* at 115, 122 S.Ct. 2061. "Provided that an act contributed to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." *Id.* at 117, 122 S.Ct. 2061.

█ Thus, while a plaintiff can seek counseling for a hostile work environment claim under the CAA within 180 days of an act by defendant that contributed to the hostile environment, a plaintiff must seek counseling regarding a discrete act of discrimination or retaliation within 180 days of the date the act actually occurred. Defendant argues that plaintiff cannot "cobble together a conglomeration of discrete acts" under the guise of a hostile work environment. Def.'s Mot. to Dismiss at 18.

letter from Blackmon–Malloy to C. Ware. Defendant urges this Court to find that plaintiffs failed to participate in the mediation process in good faith. However, plaintiffs' decision not to extend mediation after their statutorily required 30 days shall not be held against them, as an extension can only be granted if both parties consent. *See* 2 U.S.C. §§ 1403(c), 1404. The exhaustion of administrative remedies requirement was not meant to "erect a massive procedural roadblock to access to the courts..." *Jasch v. Potter,* 302 F.3d 1092, 1096 (9th Cir.2002).

In *National Railroad Passenger Corp v. Morgan,* the Supreme Court reserved the question of whether acts before the filing period are actionable as part of a "pattern-or-practice" case. *Id.* at 115 n. 9, 122 S.Ct. 2061. A "pattern-or-practice" case is one that alleges "systematic discrimination against a protected class of individuals where the alleged act reflect an intent to discrimination against all persons in the class." *Haynie v. Veneman,* 272 F.Supp.2d 10, 17 n. 4 (D.D.C.2003).

A "failure to promote" is a discrete act which must be pursued within the limitations period. *Morgan,* 536 U.S. at 113–14, 122 S.Ct. 2061. Generally, a plaintiff may not complain about a failure to promote when he did not seek to be considered for a promotion. *See Cones v. Shalala,* 199 F.3d 512, 516–17 (D.C.Cir.2000). Plaintiffs note that the Supreme Court has held that applicants faced with a consistently enforced discriminatory policy may seek relief for non-promotions or non-selections even if they did not apply. *Teamsters v. United States,* 431 U.S. 324, 365, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In doing so, the Court noted

> A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to humiliation of explicit and certain rejection ... a per se limitation on the equitable powers granted to courts by Title VII would be manifestly inconsistent with the historic purpose of equity to secure complete justice and with the duty of courts in Title VII cases to render a decree which will so far as possible eliminate the discriminatory effects of the past.

*Id.* (citation omitted). The Court further explained that "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwilling-ness to engage in a futile gesture, he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Id.* at 365–366, 97 S.Ct. 1843.

Plaintiffs assert that some members of the class, such as Plaintiff Leonard Ross, participated in four promotions exams and had not been promoted despite being well qualified. Jt Comp. ¶ 37. Plaintiffs argue that to require Officer Ross to have participated in the 2000 promotion process in order to state a claim would be in contravention of *Teamsters.*

■ Here, however, *Teamsters* cannot save any of the non-promotion claims that would be barred by the 180–day limitations period under the CAA. *See* 2 U.S.C. § 1402(a). Plaintiffs' cause of action would accrue at the time plaintiffs "finally realized" that participation in the 2000 process was a futile gesture. Under the current promotion process, officers are informed of their eligibility and must indicate whether they intend to participate in the exam. When an officer decided not to participate because she believed that the system was a "sham," her cause of action began to accrue. *See generally McCants v. Glickman,* 180 F.Supp.2d 35, 40–41 (D.D.C.2001)(limitations period begins to run when plaintiff has "reasonable suspicion" that he was being discriminated against).

Plaintiffs argue that this Circuit has not addressed the specific question of whether promotion from a tainted employment list constitutes a continuing violation. Plaintiffs argue that this Court should adopt the standard of the Second Circuit and find that each time a member of the plaintiff class is denied a promotion, he or she suffers an act of discrimination in furtherance of a "continuously maintained illegal employment policy" where "the results of a test were in effect being used to discrimi-

nate." *Guardians Association v. Civil Service Commission of the City of New York,* 633 F.2d 232, 249 (2d. Cir.1980).

However, with regard to the CAA and against the backdrop of a limited waiver of sovereign immunity, this Court is not inclined to follow the Second Circuit's approach. For the 2000 promotion process, the participation opt-in date for both the Sergeant's and Lieutenant's exam was August 1, 2000, which is more than the 180 days prior to any request for counseling. *See* Def.'s Reply Ex. 1 Jones Decl. ¶ 2 & Exs. A–B. Accordingly, only those officers who participated in the 2000 promotion process may challenge the process.

**4. Relaxed initial pleading requirements of class member who are not "named plaintiffs" or class agents.**

Defendant argues that plaintiffs' current complaint, which states that several plaintiffs stated "provable claims of discrimination with respect to matters alleged in this Complaint," is insufficient to meet even the minimal standards of Federal Rule of Civil Procedure Rule 8(a)(2). *See Swierkiewicz v. Sorema,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). *Swierkiewicz* requires plaintiffs to "give defendant fair notice of what [plaintiffs'] claims are and the grounds upon which they rest." *Id.*

█ Regardless, if a class is certified, then the claims of the class members will be the same as the claims of the named class agents and class representatives. *See Foster v. Gueory,* 655 F.2d at 1321. As long as a class action is pending, the employer is on notice of the claims of all class members. *Cf. Laffey v. Northwest Airlines,* 567 F.2d 429, 472 (D.C.Cir.1976)(finding the filing of EEOC charge by any class member provides sufficient notice to defendant with respect to all class members). If class certification were denied, any plaintiffs seeking to pursue individual claims would need to satisfy Federal Rule of Civil Procedure 8's pleading requirements.

**5. Non-timely disparate impact claims shall be dismissed.**

In the Joint Second Amended Complaint, plaintiffs allege that the USCP "has established and maintained a racially discriminatory system which discriminates against its African American officers in promotions, other selections, work assignments, discipline, and termination in a way that is excessively subjective and which has had a disparate impact on African American employees." Jt. Comp. ¶ 53. In support of their disparate impact claim, plaintiffs alleged the 29 percent of the USCP force is African American, while only 13 percent of the upper ranks (Sergeant and above) are African American. *Id.* ¶¶ 20–21.

While it is unclear whether these generalized allegations are sufficient to withstand a motion to dismiss, it is clear the plaintiffs have not alleged that the "excessively subjective" system had a disparate impact on African Americans within 180 days of the first request for counseling. Plaintiffs have not alleged that the 2000 Sergeant's or Lieutenant's promotion process had a disparate impact on African American officers. Plaintiffs have not alleged that an African American officer was denied a promotion based on the existence of a command discipline or performance notes in his or her personnel file or received unfavorable assignments within 180 days of the first request for counseling. Without a timely request for counseling and mediation, these claims also fail.

*VI. Conclusion*

At this juncture, the Court has been presented with hundreds of pages of pleadings regarding these claims. This Court

has endeavored to provide the parties with some guidance regarding its interpretation of the Congressional Accountability Act. At this time, it is unclear which, if any, of plaintiffs' claims remain viable. Accordingly, because it is a plaintiff's burden in the face of a Rule 12(b)(1) challenge, it is by the Court hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED** without prejudice to reconsideration of those plaintiffs' claims that conform to the timely counseling and mediation requests as explained in this Memorandum Opinion. Any Motion for Reconsideration shall be filed by no later than November 1, 2004. The Motion shall clearly state (and provide appropriate documentation for) the allegedly discriminatory act, the date the act occurred, the date counseling was requested, the date the claimant attended counseling, the date mediation was requested, and the date a mediation session was attended. This Court shall not consider claims that do not appear in the Complaint. Any Response to this Motion shall be filed by no later than December 1, 2004. Any Reply shall be filed by no later than December 15, 2004; and it is further

**ORDERED** that in light of the above decision, the pending Motion to Certify a Class and the pending Motion to Add Class Agents shall be **DENIED AS MOOT**; and it is further

**ORDERED** that plaintiffs in the consolidated cases of *Blackmon–Malloy v. U.S. Capitol Police Board,* Civ. No. 02–1859; *Fields v. U.S. Capitol Police Board,* Civ. No. 02–1346; *Ross v. U.S. Capitol Police Board,* Civ. No. 02–2481; *Fields v. U.S. Capitol Police Board,* Civ. No. 03–1505, *Bolden–Whitacker v. U.S. Capitol Police Board,* Civ. No. 03–2644; *Young v. U.S. Capitol Police Board,* Civ. No. 04–320 shall file an appropriate pleading, by no later than November 1, 2004, explaining how they have conformed to the exhaustion requirements. The pleading should detail the allegedly discriminatory act, the date the act occurred, the date counseling was requested, the date the claimant attended counseling, the date mediation was requested, and the date a mediation session was attended. Any Response shall be filed by no later than December 1, 2004. Any Reply shall be filed by no later than December 15, 2004.

Because the Court anticipates the filing of Motions for Reconsideration, the Court shall not issue a separate Order granting judgment for defendant in accordance with Federal Rule of Civil Procedure 58. If plaintiffs do not move for reconsideration, the Court shall enter a final order upon motion of defendant.