NATIONAL SURETY CORP. *v.* SEWARD.

(Decided May 4, 1928.)

*Mr. F. M. Stevens* and *Mr. C. J. Maple,* for plaintiff in error.

*Mr. T. A. Conway* and *Mr. H. C. Johnson,* for defendant in error.

WASHBURN, P. J.   In this court the parties stand in the same relation as they did in the common pleas court.

Plaintiff filed its suit against the defendant, Dennis W. Seward, claiming that the defendant, as postmaster of the city of Elyria, executed and delivered to the United States Government a certain bond, by which he agreed to faithfully discharge all duties and trusts imposed upon him as such postmaster either by law or by the regulations of the post office department; and to faithfully perform his duties as fiscal agent of the government; and all duties and obligations imposed upon him by law, or regulation of the department, made pursuant to law, in connection with the postal savings system.   Said bond was in the sum of $18,000, and it was provided therein that, if the defendant faithfully discharged said

duties, said obligation should be void; otherwise, of force.

The petition further set forth that the plaintiff signed said bond as surety for the defendant, and that said bond indemnified the United States from all losses incurred by it during the incumbency of the office of postmaster by said defendant, and that, during the term of said bond, and while the same was in force, the defendant failed to comply with the terms of said bond, and that, at the expiration of his term as postmaster, there was a balance due the United States from said defendant, which he failed to pay, and that plaintiff, being bound by the terms of said bond, was required to, and did, pay the same. And plaintiff asked judgment against the defendant for the amount so paid, with interest.

The answer filed by the defendant admitted the corporate organization of the plaintiff and its right to do business in Ohio; that its business consisted of writing bonds generally, including bonds for public officers, among which officers were included postmasters, admitted that such bonds indemnified the United States from losses "sustained during the incumbency of office of such postmaster during the terms of such bond," admitted that the bond in question was executed by plaintiff and defendant, and denied the other allegations of the petition. No other defense was pleaded.

The cause came on for trial before the court and a jury. In the opening statement of counsel for plaintiff, counsel stated:

"The evidence in this case will show that the National Surety Company signed a bond of Mr. Seward as postmaster of the city of Elyria; that that bond

was in effect during all the time of his incumbency, and during the time of the settlement with the United States Government; that on December 8, 1922, at the time Mr. Seward's term of office expired, there was a balance due the United States Government from Mr. Seward of $1,261.85. That amount was not paid to the government by Mr. Seward, and the government called upon the National Surety Company to make good their bond, and they paid $1,261.85 to the United States Government for moneys that should have been paid to the government by Mr. Seward. I think that date was December 8, 1922. That is the date that the amount became due. So that we are asking a judgment here against Mr. Seward for that amount, with interest from December 8, 1922. * * *

''Now, in closing, let me say this: 'That there is in this case on the part of the plaintiff no charge against Mr. Seward on account of any criminal act committed by him; nothing of that sort is claimed here. Our contention is that it is not necessary for us to make any such charge, and our belief is that the facts do not justify such a charge, but that this shortage occurred, if the facts come out about it at all, through the default of some employee of Mr. Seward, and that, under the law of the United States, he is personally holden upon his bond for the shortage of his employees as well as his own personal shortage.' * * *

''We claim that the defendant breached his bond with the government, in that he did not faithfully discharge all the duties and trusts imposed upon him by law and by the post office regulations, in that he failed, neglected, and refused to account for

$1,261.85, being the amount set forth in the petition in this case as having been paid by this plaintiff on June 17, 1925; and that he also breached his bond in failing to account and pay over to the United States Government the moneys belonging to it coming into his possession and under his control, amounting to $1,261.85.''

The defendant moved the court to arrest the case from the jury and enter a judgment in favor of the defendant, ''for the reason that neither the petition in this case nor the statement of counsel to the jury is sufficient in law to constitute a cause of action in favor of this plaintiff and against this defendant.''

We learn from the bill of exceptions that, after such motion had been argued, the court sustained the same and directed the jury to return a verdict in favor of the defendant and against the plaintiff, which was done accordingly; to which sustaining of said motion and directing of said verdict, and entering of judgment thereon, the plaintiff then and there excepted, and within three days thereafter filed a motion for new trial, which was overruled and excepted to.

It is stated in the brief of the defendant in error that the sole question presented is ''whether the allegations of the petition and the opening statement of counsel bring the case within the rule applicable to 'implied contract,' or whether the bond in question is a bond of insurance.''

By making the motion that was made in this case, the defendant admitted, for the purpose of the motion, that said shortage existed, and that the defendant was liable for the same, and that such shortage was covered by the bond which the plain-

tiff signed, and that the government called upon the plaintiff to pay the same, and that it did pay.

It seems to be well settled that where a person is in the situation of a surety for another, if he pays, or is compelled to pay, the debt which the other was bound to pay, and for which the latter is a surety, such surety is entitled to relief against the principal. Upon the payment of the principal's debt, the surety is subrogated to the rights of the assured against the principal; the surety becomes a simple contract creditor of the principal, and is entitled to maintain the common-law action for money paid — such cause of action being based upon an implied promise on the part of the principal to reimburse his surety for any loss sustained by the latter by reason of his suretyship. This principle is firmly established in Ohio and throughout the country, where the surety is an accommodation surety. 5 Pomeroy's Equity Jurisprudence (2 Ed.), Section 2345, page 5184.

If the plaintiff was an ordinary accommodation surety, there can be no question under the law that facts were stated which gave rise to an implied promise upon the part of the defendant to pay the plaintiff, and that a good cause of action was stated.

But it is claimed by the defendant that the contract in this case was a form of insurance, and that in its construction it is subject to the rules applicable to insurance contracts generally, and not to rules applied to ordinary sureties for accommodation.

We assume that the plaintiff was a paid surety, and that the transaction amounted to a contract of fidelity insurance. In such case, for the purpose of determining the liability of the surety to the United

States, the contract should be construed according to the rules applicable to insurance contracts. *George A. Hormel & Co.* v. *American Bonding Co.*, 112 Minn., 288, 128 N. W., 12, 33 L. R. A. (N. S.), 513, and note; 1 Joyce on Insurance (2d. Ed.), Section 206c, page 548. But on the question whether the law implies a promise on the part of the principal to indemnify the surety, we know of no reason why the plaintiff should not be regarded as a surety, and we are not aware of any cases which establish the rule that, where a compensated surety has paid, he is not entitled to the protection of the law which gives to a surety a right of action against the principal for the recovery of damages sustained in consequence of the suretyship.

Such authorities as there are seem to accord to a paid surety the right to be subrogated to all of the rights of the insured under the bond against the principal on the bond.

"When an indemnity company, at the request of an employee, guarantees his fidelity to his employer, the relation of principal and surety is created, notwithstanding the rule that such a guaranty is a contract of insurance." *Maryland Casualty Co.* v. *Hjorth*, 187 Wis., 270, 202 N. W., 665.

The natural inference to be drawn from the statements made in the case at bar was that the plaintiff signed said bond at the request of the defendant.

It is well settled that a paid surety, as well as an accommodation surety, upon payment of the loss, is subrogated to the assured's right of action against *third* parties who are responsible for the loss, *U. S. Fidelity & Guaranty Co.* v. *Union Bank & Trust Co.*, C. C. A., 228 F., 448; *United States* v. *U. S. Fidelity*

*& Guaranty Co.*, C. C. A., 247 F., 16; and it would be contrary to a sound public policy to deny such right where the party causing the loss was the principal himself.

In the two following cases the sureties were compensated or paid sureties, and it was assumed that the rule applied to them as well as to accommodation sureties: *Union Stone Co.* v. *Board of Chosen Freeholders*, 71 N. J. Eq., 657, 65 A., 466; *Kolb* v. *National Surety Co.*, 176 N. Y., 233, 68 N. E., 247.

It was said in argument that the employee in the post office, whose wrongful conduct caused said shortage, was bound to the government under a bond similar to the one here in question, which bond was also signed by the plaintiff, and that plaintiff was therefore bound by two bonds to make good this loss to the government, and that it pretended to pay the same under the bond of the defendant, instead of under the bond of the guilty employee, because the latter was irresponsible; but there is nothing in the statement concerning this claim, and the trial court could not properly consider the same, and neither can we.

We hold that in the absence of an express contract or a statute to the contrary, a compensated surety upon a fidelity bond, which surety is bound to, and does, perform the obligation for which its principal is primarily liable, is entitled to recover from its principal the amount of its loss, and that, according to the record, the trial court committed error in granting the motion and in rendering judgment in favor of the defendant, and for that reason the judgment will be reversed, and the cause remanded.

*Judgment reversed and cause remanded.*

FUNK and PARDEE, JJ., concur.