Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 8, 2009             Decided July 31, 2009

No. 07-5320

SHARON BLACKMON-MALLOY, ET AL.,
APPELLANTS

v.

UNITED STATES CAPITOL POLICE BOARD,
APPELLEE

———

Consolidated with Nos. 07-5321 and 07-5322

———

Appeals from the United States District Court
for the District of Columbia
(No. 01cv02221)

———

*Lenore C. Garon* argued the cause for appellants.  With her on the briefs were *Joseph D. Gebhardt* and *Charles W. Day, Jr.*

*Peter Ames Eveleth*, General Counsel, and *William Wachter*, Attorney, were on the brief for *amicus curiae* Office of Compliance in support of appellants.

*Harry B. Roback*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Frederick M. Herrera*, Attorney, United States Capitol Police Board, entered an appearance.

Before: SENTELLE, *Chief Judge*, GINSBURG and ROGERS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In the Congressional Accountability Act of 1995 ("the CAA"), 2 U.S.C. § 1301, *et seq.*, Congress extended the protections of Title VII of the Civil Rights Act of 1964, as well as ten other remedial federal statutes, to employees of the legislative branch. In Subchapter IV Congress specified a three-step process that requires counseling and mediation before an employee may file a complaint seeking administrative or judicial relief. However, rather than use the pre-complaint regimes in place for other federal employees, Congress created an Office of Compliance and vested it with broad responsibility for counseling and mediation and adoption of rules of procedure.

In these appeals by United States Capitol Police officers from the dismissal of their discrimination complaint for failure to exhaust, three aspects of this regime are at issue: whether the three-step process is jurisdictional, whether in-person attendance by the employee is required at counseling or mediation, and whether receipt of end of counseling and mediation notices demonstrates completion of counseling and mediation. We hold

the three-step process is jurisdictional and thus affirm the district court ruling that equitable doctrines, such as vicarious exhaustion, do not apply to excuse compliance with it. We reverse, however, the district court's in-person ruling, holding that neither the CAA nor the procedural rules of the Office of Compliance require in-person attendance by the employee at counseling or mediation. Finally, we hold that receipt of written notice of the end of mediation from the Office of Compliance triggered the CAA's 30 to 90-day period for electing whether to pursue judicial or administrative relief and demonstrated the employee's completion of counseling and mediation. Accordingly, we remand the cases to the district court.

## I.

Subchapter IV of the CAA, titled "Administrative and Judicial Dispute Resolution Procedures," provides that prior to filing a complaint with the Office of Compliance ("Office") pursuant to section 1405 or in the district court pursuant to section 1408, an employee[1] must do three things:

First, "to commence a proceeding," the employee must request counseling within 180 days of the date of the alleged violation of a law made applicable by the CAA. *Id.* § 1402(a). As regards counseling, "[t]he Office shall provide the employee with all relevant information with respect to the rights of the employee." *Id.* The CAA further provides that "[t]he period for counseling shall be 30 days unless the employee and the Office agree to reduce the period." *Id.* § 1402(b). The Office must "notify the employee in writing when the counseling period has ended." *Id.* § 1402(c).

---

[1] Section 1301(3) defines which employees of the Legislative Branch are eligible to seek relief. 2 U.S.C. § 1301(3); *see id.* § 1316a(5).

Second, "[n]ot later than 15 days after receipt . . . of notice of the end of the counseling period . . . but prior to and as a condition of making an election under section 1404," the employee must "file a request for mediation with the Office." *Id.* § 1403(a). Mediation "may include the Office, the covered employee, the employing office, and one or more individuals appointed by the Executive Director" of the Office, *id.* § 1403(b)(1), but "shall involve meetings with the parties separately or jointly for the purpose of resolving the dispute between the covered employee and the employing office," *id.* § 1403(b)(2). The mediation period "shall be 30 days," which may be extended upon joint request of the parties, *id.* § 1403(c), and (as with counseling) the Office must "notify in writing the covered employee and the employing office when the mediation period has ended," *id.*

Third, between 30 and 90 days of the receipt of the end-of-mediation notice, the employee who wishes to pursue his or her claims must elect, pursuant to section 1404, to file either (1) an administrative complaint with the Office pursuant to section 1405 or (2) a civil complaint in the federal district court pursuant to section 1408. Only the latter proceeding is at issue here.

In providing for judicial proceedings, two sections of the CAA are relevant here. Section 1408(a), titled "Jurisdiction," provides:

> The district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress for a violation

> for which the employee has completed counseling and mediation.

*Id.* § 1408(a). Section 1410, titled "Other judicial review prohibited," provides that "[e]xcept as expressly authorized by sections 1407, 1408, and 1409 . . . , the compliance or noncompliance with the provisions of this chapter and any action taken pursuant to this chapter shall not be subject to judicial review." *Id.* § 1410.

This was the statutory framework when, between April 12 and May 15, 2001, officers from the United States Capitol Black Police Association delivered materials to the Office, on behalf of "approximately 200 individual Capitol Police officers, former officers, and former recruits" (collectively "officers"), asserting that the Police Board and others had violated 2 U.S.C. § 1311, which made applicable protections under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, and Title I of the Americans with Disabilities Act of 1990. The materials identified Charles Jerome Ware, Esq., as their attorney. By letter of April 13, the Executive Director of the Office informed the Association and Attorney Ware of the CAA's counseling and mediation requirements and advised that he had accepted the materials submitted as "requests for counseling by each and every individual named in the material." Ltr. from William W. Thompson II to Charles Jerome Ware at 2 (Apr. 13, 2001). Counseling was conducted in three mass counseling sessions that took place on April 28, April 30, and May 5, 2001. The Office issued to the complainants written "Notifications of End of Counseling Period" on May 16 and June 15, 2001, based on the date counseling was requested.

On June 5, 2001, Attorney Ware requested mediation "on behalf of all the employees he represent[s]." Ltr. From Charles

Jerome Ware to William W. Thompson II at 1.  On June 12, the Office appointed Herbert Fishgold and Marvin Johnson as mediators for the cases.  Additional officers requested mediation on June 27, 2001.  On June 28, the parties jointly requested extension of the mediation period to October 1, 2001, but the Executive Director extended the period only to August 1, explaining that "[i]f the parties are engaged in serious mediation efforts, further extensions will be reviewed favorably."  Notice of Extension of Mediation (June 29, 2001).  In mid-July, Attorney Ware provided further information about approximately 76 of his clients.  Upon agreement of the parties to proceed in alphabetical order, multiple mediation sessions were conducted on July 23 and 25, 2001.  Attorney Ware's records show various telephone calls and meetings with the mediators in June and July, and by sworn declaration he stated that prior to August 2, 2001, he had spoken on behalf of all his clients with Office representatives, the mediators, and counsel for the Police Board and had represented selected officers in joint mediation sessions conducted by the Office.  Ware Decl. May 21, 2004.

On August 2, 2001, the Office sent Attorney Ware and the Police Board a "NOTICE OF END OF MEDIATION" advising them of the dates of mediation and that the matters underlying the requests for mediation were not resolved.  The notice also advised that the officers had to make an election pursuant to section 1404 to proceed under sections 1405 or 1408 "not later than 90 days, but no sooner than 30 days, after [they] ha[d] received this notice."  The notice provided further details about proceedings under section 1405.  Attached to the notice was a five-page single-spaced listing of the names and case numbers of the officers to whose claims the notice applied.  On October 2, 2001, the Office certified, through its custodian of records, the dates of the requests for counseling and mediation, the dates the

notices of the ends of those periods were mailed, and the dates receipt of the notices was acknowledged.

The officers filed a complaint in the district court on October 29, 2001, identifying by name more than 250 current and former Capitol Police officers. They alleged systematic discrimination against minority and female officers, including discrimination in hiring, promotion, discipline, retaliation, and maintaining a hostile work environment, in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and the Civil Rights Act of 1991, *id.* § 1981a. Various amended complaints were filed adding plaintiffs. An amended class action complaint filed January 29, 2003, the operative complaint in this appeal, identified more than 100 additional officers as plaintiffs and stated that "[t]he plaintiff class agents have exhausted their administrative remedies by completing counseling and mediation with the Office." Joint Second Am. Compl. ¶ 7. The Police Board moved to dismiss the amended complaint, and the officers filed an opposition.

The district court dismissed the amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 338 F. Supp. 2d 97 (D.D.C. 2004). The district court ruled that the counseling and mediation requirements were jurisdictional, and therefore the doctrine of vicarious exhaustion was inapplicable to excuse compliance with these requirements. *Id.* at 101-06. It further ruled that mediation had to be completed in person. *Id.* at 109. And it ruled that receipt of the notices did not establish completion of mediation because "[i]n issuing the notices of the end of mediation, the Office [] was not interpreting whether mediation had been completed." *Id*. at 108. The dismissal was without prejudice, *id.* at 109, to filing a motion for reconsideration showing which, if any, of the officers had timely requested and completed counseling and mediation,

indicating "the date the claimant attended counseling" and "the date a mediation session was attended." *Id.* at 112-13. Subsequently, the district court adopted both the findings of a magistrate judge that only eight of the officers had completed counseling and mediation by in-person attendance, and the recommendation to dismiss all of the other officers' claims.

## II.

Appellants challenge the district court's interpretation of the CAA that the doctrine of vicarious exhaustion is inapplicable and that in-person attendance by the requesting employee is required at counseling and mediation. They further contend that the notices of end of counseling and mediation were determinative of fulfillment of their counseling and mediation obligations so their lawsuit could proceed on the merits. Our review of these legal questions is *de novo*. *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008).

Under the doctrine of vicarious exhaustion, each individual plaintiff in a class action need not exhaust his or her administrative remedies individually so long as at least one member of the class has. *See, e.g., Foster v. Gueory*, 655 F.2d 1319, 1321-22 (D.C. Cir. 1981); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968). However, courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 2366 (2007); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Indeed, the Supreme Court has instructed that if Title VII's timely filing requirement were jurisdictional, vicarious exhaustion would not apply. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 396-97 (1982). Whether plaintiffs may rely on vicarious exhaustion in a CAA case, then, hinges on whether the counseling and mediation requirements of section 1408(a) are jurisdictional.

Determining whether the CAA's counseling and mediation requirements are jurisdictional, an open question in this circuit, *Oscarson v. Office of the Senate Sergeant at Arms*, 550 F.3d 1, 3 (D.C. Cir. 2008), is a question of statutory interpretation. *See Avocados Plus Inc., v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004); *see generally King v. St. Vincent's Hosp.*, 502 U.S. 215, 218, 221 (1991); *Bailey v. United States*, 516 U.S. 137 (1995). To make compliance with a statutory provision a prerequisite to federal jurisdiction, a statute must include "direct statutory language indicating that there is no federal jurisdiction prior to [such compliance]." *Avocados Plus*, 370 F.3d at 1248. "We presume exhaustion is non-jurisdictional unless Congress states [otherwise] in clear, unequivocal terms . . . ." *Id. See Hettinga v. United States*, 560 F.3d 498, 503 (D.C. Cir. 2009). For example, in *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C. Cir. 1986), the court held that time limits in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, were jurisdictional because they fell under the statutory heading "Jurisdiction of Courts" and "[b]ecause the time limitation contained in [that statute] is an integral part of the same sentence that creates federal and state court jurisdiction," making it "reasonable to conclude that Congress intended thereby to create a *jurisdictional* time limitation," *id.* at 1039 (emphasis in original). The court observed that the title descriptor was part of the statute enacted by Congress, not added by a publisher or codifier. *Id.* A similar conclusion is warranted here.

Section 1408(a) of the CAA, titled "Jurisdiction," provides that a district court has "jurisdiction over [appropriate actions] commenced . . . by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title." 2 U.S.C. § 1408(a). Reemphasizing these requirements, the subsection provides: "A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling

and mediation," *id.* As in *Hardin,* the counseling and mediation requirements appear under the subtitle "Jurisdiction" and are integral parts of the same provision as the grant of jurisdiction. Furthermore, the title was part of the legislation enacted by Congress. *See* 141 Cong. Rec. H252, H261 (Jan. 17, 1995); *id.* H285 (Jan. 17, 1995). Therefore, as in *Hardin*, it is apparent from the plain terms of the text that Congress intended counseling and mediation to be jurisdictional requirements. As the text is clear, our inquiry is complete, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999), although we note the legislative history confirms this conclusion. *See* 141 Cong. Rec. S621-02, at S622, S630 (Jan. 9, 1995); *see also Am. Fed'n of Labor & Congress of Indus. Orgs. v. Donovan*, 757 F.2d 330, 351-52 (D.C Cir. 1985).

The conclusion that Congress intended the three-step process to be jurisdictional is consistent with the statutory scheme that Congress established to handle discrimination (and other) claims by its employees. Although Congress granted its employees the substantive protections of various remedial federal statutes, it established an independent[2] Office to oversee claims of unlawful conduct with a focus on informing the employee of relevant rights and then mandating a period of mediation for the parties to determine whether informal resolution of the dispute is feasible and worth pursuing. In doing so, Congress struck a balance between affording its employees the protections enjoyed by other federal employees but initially offering employing offices, which may involve elected Members of Congress, *see, e.g.*, *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006) (en banc), an

---

[2]   Section 1381(a) provides that the Office shall be "an independent office within the legislative branch of the Federal Government." 2 U.S.C. § 1381(a).

opportunity to settle claims prior to commencement of formal administrative or judicial proceedings.

Appellants offer no persuasive counter argument, primarily because their contention that the vicarious exhaustion doctrine applies even if the three-step pre-complaint process is jurisdictional proceeds on the faulty premise that Title VII's timely-filing requirement is jurisdictional. *See* Appellants Br. 46-47. In *Zipes*, however, the Supreme Court held that "filing a timely charge of discrimination with the EEOC is *not* a jurisdictional prerequisite to suit in federal court" in Title VII cases. 455 U.S. at 393 (emphasis added); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 408 (1975). Furthermore, the precedents on which appellants rely do not stand for the contrary proposition. For example, in *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984), which appellants cite, the Supreme Court explicitly notes this holding in *Zipes. Id.* at 152 n.6. In any event, although Title VII's timely filing requirement is not jurisdictional, the CAA does not fully incorporate Title VII. *See* 2 U.S.C. §1311. The CAA incorporates much of Title VII's substantive law, but it establishes its own comprehensive administrative regime — including jurisdictional provisions. "The provision granting district courts jurisdiction under Title VII, 42 U.S.C. §§ 2000e-5(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC," *Zipes*, 455 U.S. at 393, whereas section 1408(a) of the CAA does include a limit and, therefore, warrants a different conclusion. Therefore, the unincorporated jurisdictional provision of Title VII does not guide our interpretation of the CAA. *See id.* §§ 1401-1416; *see also id.* § 1361(f)(1).

Because we hold that the CAA's counseling and mediation requirements are jurisdictional, the district court correctly ruled that it was not empowered to apply the equitable doctrine of vicarious exhaustion to excuse compliance with those

requirements. Appellants' contention that the district court abused its discretion by deciding whether counseling and mediation requirements were jurisdictional before ruling on their motion for class certification fails, as jurisdiction is a threshold question, *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 93-94 (1998). Nothing in section 1410, which prohibits review of action taken pursuant to the CAA except as therein authorized, deprived the district court of jurisdiction to ensure that the parties invoking its jurisdiction had satisfied the requirements of section 1408(a). *See also* 2 U.S.C. § 1361(d)(1), (e) ("Only a covered employee who has undertaken and completed the procedures described in sections 1402 [counseling] and 1403 [mediation] of this title may be granted a remedy under part A of this subchapter."). We therefore turn to appellants' challenge to the district court's ruling that under section 1408 they must have been present in person for counseling and mediation.

## III.

Section 1402(a) provides: "To commence a proceeding, a covered employee . . . shall request counseling by the Office. The Office shall provide the employee with all relevant information with respect to the rights of the employee." 2 U.S.C. § 1402(a). Section 1403(b) provides that "[m]ediation under this section–

> (1) may include the Office, the covered employee, the employing office, and one or more individuals appointed by the Executive Director . . . , and

> (2) shall involve meetings with the parties separately or jointly for the purpose of resolving the dispute between the covered employee and the employing office.

2 U.S.C. § 1403(b). Concluding there was an ambiguity in the latter provision, the district court deferred to the Office's procedural rules governing mediation, *Blackmon-Malloy*, 338 F. Supp. 2d at 109 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)), and cited Office Rule ("OC Rule") 2.04(a), which provides:

> (a) *Explanation.* Mediation is a process in which employees, employing offices *and their representatives, if any*, meet separately and/or jointly with a neutral trained to assist them in resolving disputes.

OC Rule 2.04(a) (emphasis added). The district court did not discuss its interpretation of this provision, merely citing it as support for its determination that mediation "requires an employee's presence." *Blackmon-Malloy*, 338 F. Supp. 2d at 109. We agree with appellants that this determination was error.

Preliminarily, we are unpersuaded by the Police Board's position that appellants forfeited the argument that their in-person attendance at counseling and mediation sessions is not required, by failing to raise the argument in the district court. The Police Board relies on the general rule that, absent exceptional circumstances, this court will not entertain arguments not made in the district court, s*ee, e.g., Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 867 (D.C. Cir. 2008). That rule, however, does not apply where the district court nevertheless addressed the merits of the issue. In *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court stated that its traditional rule is to consider issues that were "pressed or passed upon below," *id.* at 41 (internal quotations and citations omitted), a rule that "operates (as it is phrased) in the disjunctive, permitting review of an issue not pressed so long as it has been passed upon," *id.* Although that case involved the Supreme Court's

certiorari jurisdiction, this court has held that "the considerations underlying the rule have force for the courts of appeals as well." *United States v. Williams*, 951 F.2d 1287, 1290 (D.C. Cir. 1991); *see also Jackson v. Culinary Sch., Ltd.*, 27 F.3d 573, 583-84 (D.C. Cir. 1994), *vacated and remanded*, 515 U.S. 1139 (1994), *reinstated in relevant part*, 59 F.3d 254, 255 (D.C. Cir. 1995). Assuming appellants failed to present this argument there, the district court's opinion clearly addressed the merits of the in-person attendance issue. The district court discussed the definition of mediation under section 1403(b)(2), concluded there was an ambiguity and that *Chevron* deference was due, and read OC Rule 2.04(a) to require "the employee's presence." *Blackmon-Malloy*, 338 F. Supp. 2d at 109 (citing 2 U.S.C. § 1403(b)(2) and OC Rule 2.04(a)). Review here is thus appropriate because the district court "passed upon" the in-person issue appellants now present to this court.

On the merits, we turn first to the counseling requirement, beginning with the text while recognizing that a holistic approach to the CAA is required. *See generally Am. Radio Relay League, Inc. v. FCC*, 617 F.2d 875, 879 (D.C. Cir. 1980) (quoting SUTHERLAND, STATUTORY CONSTRUCTION § 46.06, at 63 (4th ed. 1973)). Section 1402(a) refers only to "a covered employee" and is silent on the question whether such employee may receive counseling over the telephone (or by similar means) or may be represented at counseling by a representative in the employee's absence. Yet Congress surely knew, as the Office points out, that employees covered under the CAA live throughout the United States, far from the Nation's capital where the Office, which has a small staff, maintains its only office. *See* Amicus Br. 10, 15. Given the limited purpose of counseling to provide the employee with information about his or her rights and the limited benefit that would inure to the employee or the Office from performing this function in person, reading into the statute an in-person requirement that lacks any

textual support would appear to produce a result at odds with Congress's imposition of a 30-day limit for counseling and its vesting in the Office powers to determine the contents of counseling and the rules of procedure, *see, e.g.,* OC Rule 2.03(c)(2).

As regards mediation, section 1403(b)(2), by specifying that mediation "shall involve meetings with the parties," 2 U.S.C. § 1403(b)(2), could be read to require that, as "parties," an employee and the employing office must appear in person, with the Office's Rule 2.04(a) indicating that each may have a representative present as well. But such a literal interpretation would run afoul of the Supreme Court's instruction that courts should construe statutory language "in accord with its ordinary or natural meaning," *Smith v. United States*, 508 U.S. 223, 228 (1993), in the context of the statutory scheme, *id.* at 233-34 (internal quotation omitted), since "statutory language, plain or not, depends on context," *King*, 502 U.S. at 221; *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006); *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997). As appellants observe, reading section 1403(b)(2) to require in-person attendance of employees at mediation would require the court to conclude that Congress used the phrase "meetings with the parties" in a manner contrary to its commonly understood use in other mediation and judicial proceedings, which allow a "party" to be represented by counsel in the absence of the client, *see* Amicus Br. at 20 n.6 (citing D.C. Circuit Rule App. III (Appellate Mediation Program); *Arends v. Iowa Select Farms, L.P.*, 556 N.W.2d 812, 815-16 (Iowa 1996); *Envtl. Contractors, LLC v. Moon*, 983 P.2d 390, 393 (Mont. 1999)); FED. R. CIV. P. 16(a), (c)(1); D.C. Dist. Ct. Local Rules 84.7, 16.3. Under the interpretation advanced by the Police Board, individual Members of Congress would have to appear at mediation where a Member is the employing office, a meaning that would appear improbable. That Congress rather intended the phrase

"meetings with the parties" to be a general description of the mediation process, and not to impose a requirement that employees must attend in person, seems evident also from the context in which the phrase is used. While stating that mediation "may" include the covered employee, 2 U.S.C. § 1403(b)(1), the CAA states that it "shall" involve meetings with the parties, *id.* § 1403(b)(2). It is difficult to square the first permissive instruction with the second requirement if the covered employee must attend mediation in person.

Although commentators suggest that mediation works better when the decision makers appear in person, KIMBERLEE K. KOVACH, MEDIATION: PRINCIPLES AND PRACTICE 93 (3d ed. 2004); DWIGHT GOLAN, MEDIATING LEGAL DISPUTES § 5.1.3 (1996), a conclusion that Congress intended to preclude an employee's appearance through a representative would seem an odd one for Congress to adopt in light of the press of legislative duties and the limited timeframe in which mediation is to occur. The Office explains, for instance, the practical reality that the CAA's strict time limits could make scheduling in-person mediation, much less counseling, impossible for logistical reasons where employees are located throughout the United States or where there are large numbers of complainants given the small Office staff. *See* Amicus Br. 10, 15. Even when mediating a claim by a single employee who resides in a geographically convenient location, the Office observes that "[a]part from the questionable fairness of requiring an emotionally distraught or frightened employee to choose between attending mediation sessions against his will and forfeiting his rights under the CAA, the prospect of achieving settlement may be enhanced if the employee is *not* required to appear in person but instead appears through counsel." *Id.* at 16-17 & n.5 (emphasis in original).

At most, therefore, sections 1402 and 1403 create an ambiguity, as the district court concluded with respect to mediation, that could be filled by the Office's rules of procedure. *See Chevron*, 467 U.S. at 842-43. The Police Board maintains Office Rule 2.04(a) unambiguously requires in-person attendance at mediation. To the contrary; the Office's procedural rules lend only greater support to the conclusion that the "parties" need not attend mediation sessions in-person. As their author, the Office is entitled to deference when interpreting its rules. Despite the fact that this interpretation comes before the court in the form of an amicus brief, the Supreme Court has made clear that in circumstances like those in the instant case, the interpretation is nonetheless "controlling unless plainly erroneous or inconsistent with the regulation," *Auer v. Robbins*, 519 U.S. 452, 461 (1997). The Office points out that "Rule 2.04(a) merely paraphrases Section [1]403(b)'s characterization of the mediation process" and was "intended to be descriptive, not prescriptive." Amicus Br. 13. By contrast, Rule 2.04(f), titled "Procedures," provides that the "neutral [mediator] has the responsibility to conduct the mediation, including deciding how many meetings are necessary and *who may participate in each meeting*." OC Rule 2.04(f)(1) (emphasis added). Furthermore, Rule 2.04(g), titled "Who May Participate," provides:

> A representative of the employee and a representative of the employing office who has actual authority to agree to a settlement agreement on behalf of the employee or the employing office, as the case may be, must be present at the mediation or must be immediately accessible by telephone during the mediation.

OC Rule 2.04(g).

By requiring that representatives of the employee and employing office have settlement authority or be "immediately accessible by telephone," the Office contemplated the absence of the employee and the employing office during mediation, and Rule 2.04(g) would be superfluous if the rules actually required the "parties" to attend in person. Amicus Br. 14. For these reasons, the Office's interpretation of Rule 2.04(a) is not, as the Police Board maintains, "nothing more than an agency's convenient litigating position," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988), to which the court owes no deference when "wholly unsupported by regulations, rulings, or administrative practice," *id.* at 212. Quite the contrary. The Office's interpretation of Rule 2.04(a) is both consistent with that rule and not plainly erroneous, *Auer*, 519 U.S. at 462, and is therefore a controlling interpretation of any ambiguity that may exist in that rule. Indeed, the Police Board's contrary position, that the plain text of Rule 2.04(a) requires in-person attendance by the employee at mediation because it admits of no other reading, and that Rule 2.04(g) merely states a representative does not have to be present, is untenable because it would create an inconsistency between subsection (a) and subsections (f) and (g), rather than read them in harmony. That some of the practical problems with an in-person attendance requirement identified by the Office may not have occurred in appellants' particular cases is of no moment.

Because Congress has not explicitly denied an employee the opportunity to appear through a representative at counseling or mediation and has expressly authorized the Office to issue procedural rules, and because the Office's interpretation that its Rules 2.04(a) and (g) do not require in-person attendance by the employee at mediation is not "plainly erroneous or inconsistent with the [rules]," *Auer*, 519 U.S. at 461, we hold that neither the CAA nor the Office's procedural rules require the employee's in-person attendance at counseling or mediation.

**IV.**

The question remains whether, as appellants contend, the CAA required the district court to accept the Office's end-of-counseling and end-of mediation notices as demonstrating that the officers "completed counseling under section 1402 of this title and mediation under 1403 of this title" as section 1408(a) requires. Again we look to the text and structure of the CAA. *King*, 552 U.S. at 218, 221.

Section 1403(c) provides: "The Office shall notify in writing the covered employee and the employing office when the mediation period has ended." By contrast, section 1408(a) grants the court jurisdiction over the civil action of "a covered employee who has completed counseling . . . and mediation." *Id.* § 1408(a). Although use of the words "completed" and "mediation," as opposed to the words "ended" and "period" might suggest that Congress intended the two provisions to refer to different things, s*ee Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62-63 (2006); *Russello v. United States*, 464 U.S. 16, 23 (1983), the text and the statutory scheme reveal that the different terms reflect the different stages of the process rather than signaling unspecified requirements for "actual mediation," as the Police Board offers. Despite subtle differences,[3] the two

___

[3] Congress used the verb "end" in section 1403(b) in its intransitive form, meaning: "to come to an end." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 381 (10th ed. 1993); *see also* "End," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2009). The definition of the transitive verb "complete" is: "1: to bring to an end and especially into a perfected state[, as in] complete a painting[;] 2a: to make whole or perfect[, as in] its song completes the charm of this bird[;] b: to mark the end of[, as in] a rousing chorus completes the show[;] c: to execute, fulfill[, as in]

terms are quite similar in context, both embracing the idea of an "end" to mediation. Consistent with Congress's intention to afford the employing office a time-limited opportunity to seek informal resolution of an employee's claim, Congress's use of the word "completed" in section 1408(a) must therefore refer to the employee's acts of timely requesting counseling and mediation, not thwarting mediation by failing to give the employing office notice of the claim upon request, and receiving notice of the end of mediation before filing suit. This interpretation of "completed" is consistent with the dictionary definitions of the term and also with the statutory scheme, which, as explained below, provides for strict confidentiality of the mediation process and vests in the Office, subject to strict time limits, broad authority to tailor the content of counseling and mediation to the circumstances of individual cases.

Congress's inclusion of provisions requiring the Office to issue written notices of the end of counseling and the end of mediation must be read in light of the provisions on confidentiality. Those provisions, sections 1416(a) and (b), provide that counseling and mediation, respectively, "shall be strictly confidential." 2 U.S.C. § 1416(a) & (b); *see also* OC Rules 2.03(e), 2.04(j), 2.10. A separate provision protects the appointed mediator from "subpoena or any other compulsory process with respect to the same matter." 2 U.S.C. § 1403(d). By so providing, Congress understood what courts and commentators acknowledge, namely, that confidentiality plays a key role in the informal resolution of disputes, *see, e.g.*, *Beazer*

---

complete a contract." WEBSTER'S at 235; *see also* "Complete," THE AMERICAN HERITAGE DICTIONARY. Being transitive ("a covered employee who has completed"), the word "complete" implies some action on the part of the employee, whereas the mediation period "ends" when the time period elapses, regardless of any action taken by any party.

*East, Inc. v. Mead Group*, 412 F.3d 429, 435 (3d Cir. 2005); *see also Local 808 v. Nat'l Mediation Bd.*, 888 F.2d 1428, 1435-36 (D.C. Cir. 1989) (citing P. PRASOW & E. PETERS, ARBITRATION AND COLLECTIVE BARGAINING 234 (1970)); *see generally* KOVACH at 263-66.  In light of these confidentiality provisions, Congress's provision for end of counseling and  mediation notices must be understood as a mechanism to eliminate potential ambiguities about when an employee completed those processes and when the time begins to run for the employee to make an election pursuant to section 1404.  That counseling and mediation remain strictly confidential indicates Congress's intent that the end of mediation notice serves to demonstrate an employee's completion of the process and to commence the formal complaint proceedings contemplated by section 1404, which begin anew the complaint and response dialogue between the parties.

For the jurisdictional requirement in section 1408(a) to mean more could create a catch-22 for the employee who, having received a notice of the end of mediation, timely files a complaint pursuant to section 1404 only to have his or her complaint dismissed for failure to have successfully "completed" mediation in the eyes of the court.  Nothing in the CAA suggests Congress intended courts to engage in a mini-trial on the content of the counseling and mediation sessions, an inquiry that would be fraught with problems.  Indeed, the colloquy during oral argument with Police Board counsel demonstrates why.  Counsel suggested that the district court should determine whether claims were "actually mediated," but could neither identify what exactly an employee would need to do in order to meet the "actual mediation" standard, nor explain how much mediation would be enough.  *See* Oral Arg. 33:28-36:35.  Moreover, unlike agency exhaustion in other contexts, the purposes of counseling and mediation are not to compile a record for judicial review but instead simply to afford the

employee and the employing office an opportunity to explore and possibly resolve the employee's claims informally. As such, Congress expressly limited the ability of the court to review the substance of compliance with these processes, 2 U.S.C. § 1403(d).

In addition to the confidentiality provisions, Congress's inclusion of strict time limits for counseling and mediation reflects an intention to eliminate undue barriers to access to the courts for resolution of the employee's substantive claims. Those provisions, sections 1402(b) and 1403(c), spell out rather short periods of time for counseling and mediation. *See* 2 U.S.C. §§ 1402(b), 1403(c).[4] Additionally, section 1402(b) bars the possibility of extending the counseling period, in fact providing that the Office and the employee can agree to reduce it, and section 1403(c) limits extensions of mediation to those instances in which the parties jointly request an extension, thereby

---

[4] Even so, the timetable under the CAA means, in general, that completion of the counseling and mediation will take more than three months before an employee will be in a position to elect further remedies under 2 U.S.C. § 1404:

> 30 days for counseling
> + ~5 days for receipt of notice of end of counseling
> + 15 days after receipt to file for mediation
> + 30 days of mediation
> + ~5 days for receipt of notice of end of mediation
> + 30 days thereafter until an employee can file a suit
> = ~115 days, or almost four months.

Combined with the 180-day limit for requesting counseling after an alleged unlawful action and assuming an employee took the full 90 days after receipt of an end of mediation notice before filing suit, almost a year could pass before a complaint was filed in the district court.

permitting the employee a right to refuse to extend the mediation period. These time limits reflect an intention to allow disputes to move forward quickly, while at the same time affording the employing office an opportunity to pursue the informal resolution of disputes before they proceed to more formal channels.

The Police Board's contrary interpretation of the statutory scheme would overlook these strict time limits and leave the employee to wait until his claim is "actually mediated," Appellee's Br. 38, 44, or be deemed to have "refus[ed] to mediate [his] claim[ ]," *id*. at 39. But Congress required the parties' joint request to extend mediation, 2 U.S.C. § 1403(c), thereby giving each party the prerogative to refuse to agree to an extension and specifying no sanction upon such refusal. Congress's definition of "mediation" was limited both by the explicit definition in section 1403(b) and the time limit set in section 1403(c). The time limits Congress set evince a determination that a 30-day mediation period would suffice to give the employing office an opportunity — even if ultimately unsuccessful — to consider resolution of its employee's claims informally. Furthermore, even granting the Police Board's view that the Office's issuance of the notices of the end of mediation was merely ministerial does nothing to undermine the role of the notices in ensuring clarity for complaining employees. Receipt of these notices commences the third step of the statutory process, not unlike the right-to-sue letter that the EEOC must issue under Title VII after 180 days of EEOC inaction, 42 U.S.C. § 2000e-5(f)(1).

The Police Board, the employing office here, further overlooks its involvement through its counsel in discussions with the officers and their representatives, as well as the Office's rejection of the parties' joint request to extend mediation for three months. It is true that Congress defined "mediation" as

involving "meetings with the parties," 2 U.S.C. § 1403(b)(2); *see* OC Rule 2.04(a), but Congress was also clear that such meetings could occur "with the parties separately or jointly," *id.*, (in arguing in-person attendance was required, the Police Board's brief quotes only the former phrase, not the latter. Appellee's Br. at 45.), and the record shows that officers represented by Attorney Ware, and possibly others, met with the mediators and with counsel for the Police Board. Moreover, the record shows that the Executive Director of the Office determined that mediation should not be extended for the three months the parties had jointly requested at the end of June 2001, unless it was clear after one month's extension that "the parties are engaged in serious mediation efforts." Notice of Extension of Mediation (June 29, 2001). Although the Police Board suggests the short time limits provided an equitable ground for extending the mediation period for "actual mediation" of each officer's claims, such equitable considerations are irrelevant; the court is not reviewing the Office's refusal to extend the mediation period based on its failure to take such equitable considerations into account. The Police Board's reference to equitable considerations that could toll the statutory period to allow "actual mediation" reflects a gloss on statutory language that the words chosen by Congress do not support.

The scheme that Congress enacted in the CAA indicates, as this court observed in regard to Title VII, that "Congress contemplated that the exhaustion doctrine would be held within limits consonant with the realities of the statutory scheme," *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980). "It is not an end in itself; it is a practical and pragmatic doctrine that . . . like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of 'rooting out . . . every vestige of employment discrimination within the federal government.'" *Id.* at 363 (citation omitted; second ellipsis in original). So, too,

courts must take care not to construe the CAA in such a manner as to "erect a massive procedural roadblock to access to the courts." *Id.* at 362; *see McRae v. Librarian of Congress*, 843 F.2d 1494, 1496 (D.C. Cir. 1988) (internal quotations omitted). Here appellants submitted, through their professional association, materials that identified their claims and were deemed by the Office to have requested counseling, and received notices of the end of the counseling period from the Office. Attorney Ware then requested mediation on behalf of the officers he represented, in conformance with OC Rule 2.04(b), and participated in Office processes to engage in mediation, but his clients ultimately concluded, as Congress made clear they could, that they did not wish to extend mediation further. That determination came after the Office had turned down the parties' joint request to extend mediation, noting that if mediation efforts proved useful after one month, requests for further extensions would be considered favorably. At this juncture, end-of-mediation notices were issued by the Office. Given Congress's determination to hold itself accountable in the same manner it previously required of the other branches of government, "that wholesome objective would be disserved by requiring in the name of exhaustion more of [such officers] than [they] already [have] done," *Vance*, 627 F.2d at 363. We therefore hold that the reference in section 1408(a) to "completed counseling . . . and mediation" means no more than that the employee timely requested counseling and mediation, that the employee did not thwart mediation by failing to give notice of his or her claim to the employing office upon request, that the mandated time periods have expired, and that the employee received end of counseling and mediation notices from the Office.

Finally, we observe that any good faith requirement that may exist for completion of counseling and mediation would present the district court with an opportunity for only a limited

inquiry. Although courts have recognized circumstances in which a plaintiff so thwarted the administrative process as to preclude judicial relief, *see, e.g.*, *Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990); *Johnson v. Bergland*, 614 F.2d 415, 418 (5th Cir. 1980); *Woodard v. Lehman*, 717 F.2d 909 (4th Cir. 1983); *Edwards v. Dep't of the Army*, 708 F.2d 1344 (8th Cir. 1983); *Jordan v. United States*, 522 F.2d 1128 (8th Cir. 1975), this court has recognized that those cases involved extreme situations in which "the complainants rest[ed] on vague allegations of discrimination and refuse[d] to provide any details or dates, thus completely frustrating the agencies' ability to investigate complaints." *Wilson v. Peña*, 79 F.3d 154, 165 (D.C. Cir. 1996). Nothing in the record described herein suggests appellants did not proceed in good faith.

Accordingly, we hold that under the CAA, counseling and mediation are jurisdictional requirements, with the consequence that the doctrine of vicarious exhaustion does not apply. We also hold that the CAA does not require the officers to attend counseling and mediation in person. Finally, because the receipt of end of mediation notices documented completion of counseling and mediation under section 1408(a), we remand the cases to the district court.[5]

---

[5] On remand, the district court shall determine which officers made timely requests under sections 1402 and 1403 and provided notices of their claims upon request, and which officers received end of mediation notices and made timely elections pursuant to section 1404.