*544 GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
In my view, the district court erred in entering summary judgment against Lam-son’s contract claim. I would reverse that aspect of the district court’s judgment and remand for further proceedings on that claim. I join the majority in their resolution of the other issues.
There is no real dispute that Youngstown Steel Door Industries, Inc. (YSD) was required to reimburse Lamson by virtue of the guarantor relationship set forth in the settlement agreement. In Ohio, “the law implies an obligation of a principal debtor to reimburse his guarantor for any amount that the guarantor is required to pay on the guaranteed indebtedness.” Mut. Fin. Co. v. Politzer, 21 Ohio St.2d 177, 256 N.E.2d 606, 610 (1970); see Frank Lerner & Assoc., Inc. v. Vassy, 74 Ohio App.3d 537, 599 N.E.2d 734, 740 (1991) (describing the reimbursement obligation as arising from an “implied contract of indemnity”); Nat’l Sur. Corp. v. Seward, 31 Ohio App. 206, 165 N.E. 588, 590 (1928) (describing the guarantor as “a simple contract creditor of the principal [who] is entitled to maintain the common-law action for money paid”). See also Poe v. Dixon, 60 Ohio St. 124, 54 N.E. 86, 88 (1899) (treating such an action as “[a]n action upon a contract not in writing”). And the defendants are surely incorrect in contending that insufficient consideration supported the guarantee in the first place. See Coldwell Banker Residential Real Estate Servs., Inc. v. Bishop, 26 Ohio App.3d 149, 498 N.E.2d 1382, 1385 (1985) (“In general, if the consideration given is sufficient to support a contract it does not matter from or to whom it moves. The consideration may be given to the promisor or a third person or may be given by the promisee or a third person.”).
Despite YSD’s patent legal obligation to reimburse Lamson for the recurring $40,000 monthly payments that Lamson made on YSD’s behalf under the guarantee, the evidence suggests that defendants purposefully decided to default on YSD’s obligations to its retirees in the hope that Lamson would have no recourse against them. Mundinger, for example, advised YSD’s lawyers and accountants that YSD “has been losing money for several months” due in part to its payment of the retiree obligations and suggested one way out of YSD’s financial crisis: “[I]f we default on these payments the responsibility goes back to [Lamson]. I see no other obligation than to advise the appropriate parties that we will be in default.” Even as defendants made the decision to abandon the retirees and leave Lamson with the obligation, they appropriated more than $3.5 million from YSD as cash distributions to themselves and spun off to themselves a YSD subsidiary that later sold for $1.25 million.
Given YSD’s reimbursement obligations, entering summary judgment against Lam-son is not appropriate on these facts. As a result, the primary obstacle separating Lamson from recovery is defendants’ assertion that Lamson waived its potentially meritorious claim by failing to assert it in the district court. In my view, Lamson’s claim was sufficiently preserved in the district court. Lamson pled breach of contract and unjust enrichment claims against defendants in both state court and federal court, specifically alleging breaches of both the purchase agreement and the settlement agreement. Ohio state courts have construed similar allegations as sufficient notice pleading to state a cause of action for breach of an implied contract. See Hambleton v. R.G. Barry Corp., 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984) (Ohio 1984) (noting that the “actual nature” of the plaintiffs unjust enrichment *545 allegations was an implied-contract claim rather than a tort claim).
After defendants moved for summary judgment, the parties’ arguments evolved over time from a focus on the purchase agreement to a focus on the settlement agreement. By the time the district court held a hearing on the summary judgment motion, Lamson explicitly argued that it possessed an implied right to indemnity from YSD by virtue of the settlement agreement and that defendants’ failure to reimburse Lamson breached their duty to indemnify. In the end, the district court reached a conflicted ruling, deciding on the one hand that Lamson “limits its breach of contract action solely to the ... Purchase Agreement” rather than the settlement agreement, but finding on the other hand that there was “no breach” of the settlement agreement because it “does not contain an indemnity clause entitling Lamson to recover from YSD amounts Lamson expended under its guarantees.”
We may generally reach an issue of law on appeal if the district court has resolved it. See United States v. Clariot, 655 F.3d 550, 556 (6th Cir.2011) (“[TJhere can be no forfeiture “where the district court nevertheless addressed the merits of the issue.’”) (quoting Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 707 (D.C.Cir.2009)). Despite the fact that the parties’ positions appear to have evolved over time, Lamson’s current claims were encompassed in its pleadings and arguments before the district court at the time of the summary judgment ruling. Given that the district court was specifically informed by Lamson of the implied duty to reimburse and ruled on the issue, I conclude that Lamson’s argument was sufficiently before the district court to preserve it for appeal.
In my view, defendants have failed to show at the summary judgment stage that Lamson is not owed reimbursement for the substantial sums it incurred under the guarantee due to defendants conduct. I therefore respectfully dissent from the majority s disposition of that portion of Lam-son’s claim against them,